IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 8:05CR83** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **MANUEL L. MARTINEZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by the Defendant, Manuel L. Martinez. (Filing No. 118.)

**FACTUAL BACKGROUND**

The Defendant, Manuel L. Martinez, was initially charged in a two-count Indictment with drug trafficking crimes. (Filing No. 1.) His motion to suppress was denied. (Filing No. 29.) Ms. Gryva then moved to withdraw, stating that Martinez refused to communicate with her once she started explaining his possible sentence and proposed plea agreement. (Filing No. 33.) The motion to withdraw was heard on August 11, 2005. In denying the motion, Magistrate Judge Thomas D. Thalken stated in his minutes that "Defendant stated he will work with his counsel." (Filing No. 36.) Four days after the hearing, Ms. Gryva filed another motion to withdraw, stating that on August 15, 2005, when she met with the Defendant he became angry during a discussion of his potential sentence and walked out of the meeting. (Filing No. 37.) This motion to withdraw was heard on August 16, 2007 and denied. (Filing No. 39.)

The Defendant pleaded guilty to Counts I and II of a Superseding Indictment charging him with: possession with intent to distribute 50 grams or more of actual

methamphetamine (Count I); and possession with intent to distribute less than 500 grams of cocaine (Count II).

The court's docket information reflects that an interpreter was available during all of Martinez's court appearances. (Filing Nos. 5, 24, 36, 39, 50.) At the sentencing hearing, the interpreter was present telephonically on a standby basis following the following discussion between the Interpreter, the Court, and the Defendant:

> INTERPRETER: . . . . I understand I am to be on standby.
>
> THE COURT: That will be fine.
>
> Mr. Martinez, will you let us know if you would like the interpreter to interpret for you this morning? I understand that you do speak English; is that correct?
>
> THE DEFENDANT: I speak a little bit, yeah.
>
> THE COURT: All right. If you want the interpreter to interpret, let us know, if you have trouble understanding.
>
> THE DEFENDANT: Okay.

(Filing No. 131; also Ex. 3, at 2.)

Also at the sentencing hearing, the following colloquy was held with respect to Martinez's right to appeal:

> THE COURT: You do have the right to appeal from your conviction and your sentence. Essentially any notice of appeal wold need to be filed within ten days of the filing of the judgment.
>
> Do you prefer to read in Spanish or English?
>
> THE DEFENDANT: Spanish.
>
> THE COURT: All right. Before you leave the courtroom, we'll provide you with a form in Spanish that outlines your right of appeal and explains how to file a notice of appeal.

> I'd like you to read through the form and sign the form before you leave today so that we know you understand your right of appeal and how to file a notice of appeal.  *Signing that form is not the same thing as submitting a notice of appeal.*
>
> If you have any questions about whether you should appeal, you should discuss the matter with Ms. Gryva.  The ultimate decision will be up to you.  Do you have any question for me about your right of appeal?
>
> THE DEFENDANT: No.  Thanks.

(Filing No. 131; also Ex. 3, at 9 (emphasis added).)

Immediately after the sentencing hearing while he was still in the courtroom, Martinez signed a "Notice of Right to Appeal." (Filing No. 61.)  The document, written in both Spanish and English, explains: the nature of the right to appeal; the procedure to be followed if a defendant cannot pay the cost of an appeal; if a defendant so requests the clerk will file a notice of appeal on the defendant's behalf; and the admonition that an appeal "must be timely filed, generally within 10 calendar days" from the date of sentencing.  In Martinez's case, he and Ms. Gryva signed the form. (Filing No. 61.)

A notice of appeal was not filed.  On or about June 18, 2006, Ms. Gryva received a letter from Martinez, in which he stated: "I am sending this letter in regards to my appeal.  In the docket sheet I have in my possession docket number-61 shows that a Notice of Appeal was filed in my case."[1]  (Ex. 4.)

In his § 2255 motion, Martinez alleges ineffective assistance of trial counsel.  Following initial review, the remaining claim involves Martinez's allegation that his attorney, Mary C. Gryva, failed to file a notice of appeal on his behalf as he requested.  (Filing No.

---

[1] The document to which Martinez refers is the Notice of Right to Appeal (Filing No. 61).

119.) The government answered the claim and filed a supporting brief and evidence in the form of an affidavit of Ms. Gryva. (Filing Nos. 120, 121, 122.) An evidentiary hearing was held before the undersigned on September 7, 2007. (Filing No. 135.)

At the hearing, Martinez testified in pertinent part that at the sentencing hearing he was handed three copies of a document "[f]or the appeal in case I wanted to appeal" that was written only in English. Once his recollection was refreshed, Martinez testified that the document was written both in Spanish and English. He testified that he did not read the document, and that he signed two of the copies after being told that "it was the [notice of] appeal." Martinez took the third copy with him. He testified that he did not have the opportunity to discuss the form with Ms. Gryva and that he had no contact with her after the sentencing hearing. He testified that he intended to file an appeal.

On cross-examination, Martinez testified that he spoke with Ms. Gryva about filing an appeal when she handed him the Notice of Right to Appeal. Although he initially testified that Ms. Gryva told him that the forms were "the papers to appeal" and that he verbally told her "I want to appeal," he later admitted that he did not ask Ms. Gryva to file an appeal, and although no one told him so he thought that by signing the form he was filing a notice of appeal. Martinez stated that he knew: he had a right to appeal; if he had asked, the Clerk would have filed a notice of appeal on his behalf; and he had ten days to file his notice of appeal. He did not recall the undersigned telling him in court that signing the form that would be given to him in court was not the same thing as submitting a notice of appeal. Martinez testified that after being returned to the jail, he no longer had access to the document he received at sentencing. He stated that he did not write to Ms. Gryva to ensure that she filed an appeal, and whenever he tried to call her after the sentencing

4

hearing her answering machine "picked up." He testified that he never left a telephone message.

Mary C. Gryva testified, in pertinent part, that she represented Martinez pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. She testified that after Martinez's motion to suppress was denied he told her that her would no longer communicate with her at any time, including during court appearances. She described the difficulties she encountered in attempting to visit with Martinez. Ms. Gryva testified that she was present with Martinez at sentencing when he received the Notice of Right to Appeal. She testified that the standby certified interpreter was still available via telephone to Martinez while he signed the form. She testified that she remained with Martinez for approximately fifteen minutes while he appeared to read and then signed the form. Although communication between Ms. Gryva and Martinez was lacking, Ms. Gryva remained with Martinez consistent with her usual practice so that she would be available if he told her he wished to file an appeal. Ms. Gryva testified that other than posing one question to her during the hearing that the undersigned subsequently answered, Martinez did not try to communicate with her at all during or after the sentencing hearing. He did not ask her about an appeal. She testified that her office has an answering service rather than an answering machine. She stated that, depending on the telephone policy in the facility in which Martinez was then incarcerated, had Martinez called her answering service after hours she would have received a message that he was trying to reach her, or she would have been alerted that he was trying to reach her by being alerted to a refused collect call from a particular facility. She never received any telephone messages from him or any indication of refused collect calls. Ms. Gryva believes that she would have been alerted to any blocked calls received

by her answering service. Ms. Gryva added that she, her law partner and paralegal also answer the telephones whenever possible. She testified that the first communication she had from Martinez following sentencing was his letter received in June of 2006. Ms. Gryva testified that the document presented to Martinez after his sentencing hearing is the document that appears at Filing No. 61, a Notice of Right to Appeal that has a different function from that of a notice of appeal. Ms. Gryva testified that she has filed "several" appeals, and she described her procedures in doing so. Ms. Gryva testified that at no time during her representation of Martinez did he ask her to file an appeal. She explained that her entry on her request for CJA funds for a November 28, 2005, client conference lasting three-tenths of an hour was intended to reflect the time she spent with Martinez after the hearing while Martinez was on the telephone with the interpreter and signed the form. (Ex. 1, at 3.)

Jim Duran testified in pertinent part that he assisted Ms. Gryva in her representation of Martinez as an interpreter. He testified that he was present with Ms. Gryva at several meetings with Martinez, including times when Martinez ended the conversations. Mr. Duran stated that he functioned on a standby basis, clarifying matters when Martinez asked him to do so.

## DISCUSSION

Ineffective assistance of counsel claims are analyzed under the framework described in *Strickland v. Washington*, 466 U.S. 668 (1984). In other words, Martinez has the burden of proving: 1) deficient performance on behalf of counsel, demonstrated by his attorney's performance "below the minimum standards of professional competence"; and 2) prejudice, by showing a "reasonable probability that the result of the proceedings would

have been different" had his attorney performed "competently." *Alaniz v. United States*, 351 F.3d 365, 367 (8th Cir. 2003) (citing *Strickland*, 466 U.S. at 690). Moreover, Martinez must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The Court heard the witnesses' live testimony. To the extent that the testimony of Martinez and Ms. Gryva vary, the Court credits Ms. Gryva's testimony. Martinez testified inconsistently, and his testimony was self-serving. Although the undersigned told Martinez specifically at sentencing that the Notice of Right to Appeal form was not the same thing as a notice of appeal, he testified that he believed otherwise. To the extent that Martinez's difficulty understanding this detail might be attributed to a linguistic problem, the record shows that he requested having the interpreter at sentencing only on a standby basis and, despite being advised to do so, never alerted the Court that he had difficulty understanding anything said at the hearing. Martinez never asked Ms. Gryva to file a notice of appeal. After sentencing, he never left Ms. Gryva a telephone message, placed collect or blocked calls to her, or wrote her until June of 2006, well after the deadline for filing an appeal had passed.

Even if Martinez had filed a notice of appeal, he has not stated the issues he intended to pursue on appeal. His plea agreement included an agreement with respect to issues including drug quantity and the base offense level. The PSR was consistent with his plea agreement with respect to those issues, and no enhancements were applied. The parties had agreed in the plea agreement that Martinez might be a career offender, yet he was not determined to be a career offender. Martinez had the PSR read to him with the aid of Mr. Duran, and through Ms. Gryva he adopted the PSR (Filing No. 56).

Therefore, Martinez is unable to show deficient performance on behalf of counsel. The record shows that Ms. Gryva represented Martinez zealously. Any failure to file a notice of appeal was due to Martinez's own inaction. Moreover, Martinez cannot show prejudice, as he has produced no evidence indicating that the result of his case would have been different had he perfected an appeal.

## CONCLUSION

For the reasons stated, Martinez is unable to prove either prong of the *Strickland* test and his § 2255 motion is denied.

IT IS ORDERED:

1. The Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Filing No. 118) is denied;

2. A separate Judgment will be entered; and

3. The Clerk of Court is directed to send a copy of this Memorandum and Order to the Defendant at his last known address.

DATED this 13th day of September, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge